1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JAMES O'ROURKE,                          No. CIV S-09-1837-CMK-P

12              Petitioner,

13        vs.                                 <u>MEMORANDUM OPINION AND ORDER</u>

14   BRYAN O'CONNOR, et al.,

15              Respondents.

16   _____/

17              Petitioner, a former state prisoner currently on parole and proceeding with

18   retained counsel, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

19   Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

20   judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).   Pending

21   before the court is petitioner's petition for a writ of habeas corpus (Doc. 1), respondents' answer

22   (Doc. 14)[1], and petitioner's reply (Doc. 16).

23   / / /

24   _____

25        [1]       On February 10, 2010, the court directed respondents to show cause within 30
     days why sanctions should not be imposed for failure to timely file their answer to the petition.
     Because respondents filed their answer within the time provided, the order to show cause will be
26   discharged.

# I. BACKGROUND

## A.   <u>Facts</u>[2]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> Defendant James O'Rourke was a pretty scary neighbor.  Four people living on his street testified he often shined a high intensity beam flashlight into their windows, yelled and cursed at them, gave them the middle finger, displayed a gun, threatened them, ran through their yard, sprayed one with a hose, and vandalized their property. . . .
>
> * * *
>
> We need not elaborate on the facts beyond those recited above. There is no dispute that defendant engaged in a series of acts targeted at four different neighbors, although he testified and gave a different interpretation of his actions.  Because the question before us is legal, not factual, we accept the neighbors' testimony that he harassed them over a period of time.

## B.   <u>Procedural History</u>

Petitioner was convicted following a jury trial of four counts of stalking – one for each of the four neighbor victims.  Petitioner was sentenced to four years in state prison.  He has completed that term and is currently on parole.  Petitioner's conviction and sentence were affirmed on direct appeal in a reasoned decision issued by the California Court of Appeal.  The California Supreme Court denied review without comment or citation.

/ / /

/ / /

/ / /

/ / /

---

[2]   Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct."  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  <u>See id.</u>  These facts are, therefore, drawn from the state court's opinion(s), lodged in this court.  Petitioner may also be referred to as "defendant."

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law.  Under both

1    standards, "clearly established law" means those holdings of the United States Supreme Court as

2    of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006)

3    (citing Williams, 529 U.S. at 412) .  "What matters are the holdings of the Supreme Court, not

4    the holdings of lower federal courts."  Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en

5    banc).  Supreme Court precedent is not clearly established law, and therefore federal habeas

6    relief is unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, 555 F.3d 742,

7    753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)).

8    For federal law to be clearly established, the Supreme Court must provide a "categorical answer"

9    to the question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a

10   state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not

11   contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

12   created by state conduct at trial because the Court had never applied the test to spectators'

13   conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's

14   holdings.  See Carey, 549 U.S. at 74.

15       In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

16   majority of the Court), the United States Supreme Court explained these different standards.  A

17   state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

18   the Supreme Court on the same question of law, or if the state court decides the case differently

19   than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

20   court decision is also "contrary to" established law if it applies a rule which contradicts the

21   governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

22   that Supreme Court precedent requires a contrary outcome because the state court applied the

23   wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

24   Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

25   id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

26   determine first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040,

1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

State court decisions are reviewed under the far more deferential "unreasonable

application of" standard where it identifies the correct legal rule from Supreme Court cases, but

unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S.

510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested

that federal habeas relief may be available under this standard where the state court either

unreasonably extends a legal principle to a new context where it should not apply, or

unreasonably refuses to extend that principle to a new context where it should apply.  See

Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

decision is not an "unreasonable application of" controlling law simply because it is an erroneous

or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,

75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found

even where the federal habeas court concludes that the state court decision is clearly erroneous.

See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper

deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.

As with state court decisions which are "contrary to" established federal law, where a state court

decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### III.  DISCUSSION

Petitioner raises one claim: "Petitioner's due process right to have a jury unanimously find every fact necessary to sustain a conviction beyond a reasonable doubt before it may find him guilty was violated when the trial court failed to sua sponte instruct the jury that it must unanimously determine which acts constituted the crimes of stalking before finding him guilty of those charges."

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available for alleged error in the interpretation or application of state law.  See Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.  See Milton v. Wainwright, 407 U.S. 371, 377 (1972).  Thus, a challenge to jury instructions does not generally give rise to a federal constitutional claim.  See Middleton, 768 F.2d at 1085) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice."  Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

/ / /

/ / /

/ / /

In general, to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail, petitioner must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting conviction violates due process.'"  Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp, 414 U.S. at 147).  In making its determination, this court must evaluate an allegedly ambiguous jury instruction "'in the context of the overall charge to the jury as a component of the entire trial process.'"  Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Further, in reviewing an allegedly ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."  Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)).  Petitioner's burden is "especially heavy" when the court fails to give an instruction.  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  Where an instruction is missing a necessary element completely, the "reasonable likelihood" standard does not apply and the court may not ". . . assume that the jurors inferred the missing element from their general experience or from other instructions. . . ."  See Wade v. Calderon, 29 F.3d 1312, 1321 (9th Cir. 1994).  In the case of an instruction which omits a necessary element, constitutional error has occurred.  See id.

The state court addressed petitioner's claim as follows:

> It is true that "[w]here the jury receives evidence of more than one factual basis for a conviction, the prosecution must select one act to prove the offense, or the court must instruct the jury that it must unanimously agree on one particular act as the offense." (citation omitted).  Defendant acknowledges that a unanimity instruction is not required, however, where the statutory offense contemplates a continuous course of conduct by a series of acts over a period of time. (citation omitted). . . . [D]efendant asserts that the stalking statute defines harassment as "two or more acts occurring over a period of time."  Because the statute specifies that two or more acts constitute harassment, defendant argues the jurors must agree on those two acts.  The continuing course of conduct exception to the unanimity instruction, in defendant's view, does not apply because the statute requires the commission of two acts.  We disagree.

1           The [California] courts . . . rejected the argument that a unanimity instruction must be given sua sponte in a stalking case.  As the court wrote in *Zavala*, "The statutory offense here is self-defined to require a course of conduct.  (internal citation omitted).  Because Zavala was charged with a 'course of conduct' offense occurring over a period of time, we conclude that the continuing course of conduct doctrine applies and, therefore, no unanimity instruction was required."  (citation omitted).

          The fact that the stalking statute defines "harasses" to mean two or more acts does not mean the course of conduct exception does not apply.  As the court in *Zavala* pointed out, the statute itself defines a violation as a "course of conduct."  There is no need for a jury to agree on whether the defendant committed individual acts as long as the net effect constitutes the statutory offense.  (citation omitted).  A course of conduct would always involve at least two acts.  We see no reason to distinguish the stalking statute from any other statute proscribing not an individual act but "a course of conduct."  We reject defendant's plea to upset the straightforward logic of [prior cases].

Petitioner argues:

          Each victim . . . revealed multiple acts on the part of petitioner that could qualify as "harassing" for purposes of demonstrating stalking.  Because the information alleged only one count of stalking as to each victim and did not set forth the specific acts the prosecution considered to be the stalking, and because the trial court did not instruct the jury that it must unanimously agree on the specific acts underling each count, petitioner's due process right to have a jury unanimously find him guilty beyond a reasonable doubt was violated.

Petitioner adds:

          . . . Each count corresponded to a separate alleged victim.  According to the testimony of each of the four victims, petitioner did not commit a single set of two acts of stalking.  Instead, each victim described multiple acts, any two of which could have been considered [harassment].  . . .  Because the prosecution failed to specify which acts it considered to constitute the [harassment] and because the trial court failed to instruct the jury that it must unanimously agree upon which specific acts constituted stalking, petitioner's constitutional right to due process was violated.  That is, without an instruction from the court or an election by the prosecution, it is possible the jurors differed as to which two acts they considered to constitute the [harassment].  Some jurors may have found two particular acts true while others may have rejected the truth of those two acts but found two others true.

According to petitioner, without the unanimity instruction, it possible that all of the jurors did not agree on an essential element of the crime.  Respondents argue first that, because there is no clearly established United States Supreme Court precedent outlining a constitutional requirement

1  for a unanimity instruction in a course-of-conduct case, federal habeas relief is unavailable.

2  Respondents also argue that, on the merits, the claim fails.

3         In <u>Schad v. Arizona</u>, the United States Supreme Court noted: "We have never

4  suggested that in returning general verdicts in [multiple theory] cases the jurors should be

5  required to agree on a single means of commission. . . ." 501 U.S. 624, 61 (1991).  The court

6  added:

7             . . . In these cases, as in litigation generally, "different jurors may
          be persuaded by different pieces of evidence, even when they agree upon
8        the bottom line.  Plainly there is no general requirement that the jury reach
        agreement on the preliminary factual issues which underlie the verdict."

9

        <u>Id.</u> at 631-32 (quoting <u>McKoy v. North Carolina</u>, 494 U.S. 433, 499 (1990)
10     (Blackmun, J., concurring).

11  The court also noted as a general rule that "the jury need not agree as to mere means of satisfying

12  the *actus reus* element of an offense. . . ." <u>Id.</u> at 632.  The Court stated, however, that this rule

13  "is not to say . . . that the Due Process Clause places no limits on a State's capacity to define

14  different courses of conduct . . . as merely alternative means of committing a single offense,

15  thereby permitting a defendant's conviction without jury agreement as to which course . . .

16  actually occurred." <u>Id.</u>  The Court then went on to say that, although the Supreme Court has

17  never addressed this issue directly, a body of circuit case law is instructive.  <u>See id.</u> at 633-34.  In

18  deciding the case before it, the Court concluded that a unanimity instruction is not required in

19  cases where alternative theories of guilt are presented, such as first degree murder based on

20  premeditation or first degree murder based on the felony murder doctrine.[3]

21         The United States Supreme Court had occasion to address the unanimity issue in

22  the context of a federal criminal statute in <u>Richardson v. United States</u>, 526 U.S. 813 (1999).

23  There, the Court concluded that a conviction under 21 U.S.C. § 848(a), which prohibits a

24  continuing criminal enterprise, requires jury unanimity as to each of the individual violations

25  ――――――――――

26       [3]     It should be noted that <u>Schad</u> is a plurality, not majority, opinion and, as such,
does not represent clearly established United States Supreme Court precedent.

1  constituting the continuing criminal enterprise.  See id. at 815.  As a matter of statutory

2  interpretation, the issue before the Court was "whether the statute's phrase 'series of violations'

3  refers to one element, namely a 'series,' in respect to which the 'violations' constitute the

4  underlying brute facts or means, or whether those words create several elements, namely the

5  several 'violations,' in respect to *each* of which the jury just agree unanimously and separately."

6  See id. at 817-18.  The Court held the statute requires the latter.  Finally, citing the plurality

7  opinion in Schad, the Court noted that due process may also impose some limitations.  But, the

8  Court did not further define those constitutional limitations.

9          From the paucity of United States Supreme Court precedent addressing the precise

10  issue raised in this case, this court can only conclude that the law is not clearly established.  For

11  its part, Schad speaks to the issue of unanimity where alternative theories for a crime are

12  advanced.  Even if Schad were on point, which it is not, it is not clearly established precedent

13  because it is a plurality decision.  As to Richardson, which comes a bit closer to the issue raised

14  in this case, the Court decided the question based on principles of statutory construction.  The

15  Court's reference to due process in Richardson is accompanied by a citation to Schad and does

16  not actually announce any clear rule with respect to the question presented in the case at bar.

17          While petitioner's argument if facially compelling in that he describes a possible

18  scenario in which the jury did not all agree on the acts constituting harassment, petitioner's

19  burden is "especially heavy" when the court fails to give an instruction.  Henderson, 431 U.S. at

20  155.  To meet this burden, petitioner must point to the existence of clearly established United

21  States Supreme Court precedent supporting his claim to relief.  In this case, petitioner has not

22  done so.  In fact, in his petition and traverse, petitioner tacitly acknowledges that the law in this

23  area is less than clear.

24  / / /

25  / / /

26  / / /

1

2                                    **IV.  CONCLUSION**

3                Pursuant to Rule 11(a) of the Federal Rules Governing Section 2254 Cases, the

4   court has considered whether to issue a certificate of appealability.  Before petitioner can appeal

5   this decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c); Fed. R. App. P.

6   22(b).  Where the petition is denied on the merits, a certificate of appealability may issue under

7   28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a

8   constitutional right."  28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of

9   appealability indicating which issues satisfy the required showing or must state the reasons why

10  such a certificate should not issue.  See Fed. R. App. P. 22(b).  Where the petition is dismissed

11  on procedural grounds, a certificate of appealability "should issue if the prisoner can show:

12  (1) 'that jurists of reason would find it debatable whether the district court was correct in its

13  procedural ruling'; and (2) 'that jurists of reason would find it debatable whether the petition

14  states a valid claim of the denial of a constitutional right.'"  Morris v. Woodford, 229 F.3d 775,

15  780 (9th Cir. 2000) (quoting Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 1604 (2000)).

16  For the reasons set forth herein, the court finds that issuance of a certificate of appealability is not

17  warranted in this case.

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

Accordingly, IT IS HEREBY ORDERED that:

1.      The court's order to show cause issued on February 10, 2010, is discharged;

2.      Petitioner's petition for a writ of habeas corpus (Doc. 1) is denied;

3.      The court declines to issue a certificate of appealability; and

4.      The Clerk of the Court is directed to enter judgment and close this file.


DATED:  November 22, 2010

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE